## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SAMUEL BLAUCH,** | : | **Civil No. 1:23-CV-1073** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **MARTIN O'MALLEY,**[1] | : | |
| **Commissioner of Social Security,** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

### I.    Introduction

Samuel Blauch was in his mid-twenties at the time of the alleged onset of his disability, a disability claim based upon a diagnosis that he experienced an autism spectrum disorder. Despite this diagnosis, Blauch had attained a bachelor's degree in college. He had lived independently for a period of time in Washington, D.C. Blauch had also gone for several years during this period of alleged disability without any significant treatment or counseling for this autism spectrum disorder which was undetected and undiagnosed. Moreover, during a substantial period of

---

[1]  Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Martin O'Malley is substituted for Kilolo Kijakazi as the defendant in this suit.

time encompassed by his disability claim, Blauch was actually employed as a front end associate in a grocery store. Three medical experts assessed the severity of the impact of Blauch's autism diagnosis upon his ability to meet the mental demands of the workplace. While the results of these assessments differed somewhat from one another, the common thread in the assessments was the conclusion that this diagnosis did not completely preclude Blauch from engaging in substantial gainful activity. Given this information, the Administrative Law Judge (ALJ) assigned to review Blauch's case denied his claim for disability benefits finding that he could perform work limited to simple, routine, repetitive tasks in a work environment free from fast-paced production involving only simple work-related decisions with few, if any, workplace changes, no interaction with the public, occasional interaction with coworkers but no tandem tasks, and occasional supervision. (Tr. 22).

Blauch now challenges this decision arguing that the ALJ erred in assessing his severe and non-severe impairments, and in evaluating the medical opinion evidence. In considering these arguments, we are enjoined to apply a deferential standard of review, a standard of review which simply asks whether there is "substantial evidence" supporting the Administrative Law Judge's (ALJ) determination. With respect to this legal guidepost, as the Supreme Court has explained:

The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S. Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S. Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S. Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

In the instant case, after a review of the record, and mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Biestek, 139 S. Ct. at 1154, we find that substantial evidence supported the ALJ's findings in this case. Therefore, for the reasons set forth below, we will affirm the decision of the Commissioner.

## II.    Statement of Facts and of the Case

### A. Blauch's Social, Educational, and Clinical History

On June 14, 2021, Samuel Blauch filed applications for a period of disability and disability insurance benefits as well as for supplemental security income

pursuant to Titles II  and XVI of the Social Security Act. (Tr. 17). In both applications, Blauch alleged disability beginning July 1, 2019, due to a diagnosis of autism spectrum disorder. (Id.) Blauch was born in May of 1993, (Tr. 40), and was in his mid-twenties at the time of the alleged onset of his disability, making him a younger worker under the Commissioner's regulations. (Tr. 28).

Prior to the date of his alleged onset of disability, Blauch had demonstrated the ability to function independently at a high level. Thus, he had graduated from Mount St. Mary's University earning a bachelor's degree in political science in 2016. (Tr. 41-43, 47). Following his graduation, from 2018 through 2019 Blauch had lived away from home working for a nonprofit organization. (Tr. 45). At the time of his disability hearing, Blauch was residing with his parents and siblings. (Tr. 41). By his own account, Blauch was able to address his daily needs. He could dress and care for himself, prepare simple meals, read, use a computer, drive, and shop. (Tr. 42, 242-252).

While Blauch alleged that he had become disabled due to his autism spectrum disorder in July of 2019, the evidence reveals that this condition remained undetected and untreated for nearly two years throughout 2019 and 2020. Instead, Blauch was first diagnosed on the autism spectrum on March 30, 2021, when Dr. Melissa Hertrich at the Wellspan Center for Autism and Developmental Disabilities

4

conducted an evaluation of Blauch. (Tr. 289-98). That evaluation concluded that Blauch was experiencing an autism spectrum disorder " although he is clearly high functioning." (Tr. 293). Following this diagnosis, Blauch met with caregivers at Wellspan who recommended individual and family therapy and placed him on a Wellspan therapy waiting list. (Tr. 357). Recognizing the value of work for Blauch, Wellspan officials also recommended that he learn more about the Pennsylvania Office of Vocational Rehabilitation (OVR), which helps individuals with disabilities prepare for, obtain, or keep suitable employment. (Tr. 360). As of the date of Blauch's August 2022 disability hearing, it was reported that he was still in the process of following up on this recommendation. (Tr. 53). Beyond these initial clinical encounters addressing his 2021 autism diagnosis, the medical record reflected no further counseling or treatment for this condition.

The administrative record did reveal, however, that Blauch had actually been employed for up to thirty hours per week as a front end associate cart handler at a local grocery store from October 2021 through 2022. (Tr. 19-20, 41, 200-01). When questioned about this employment at his disability hearing, Blauch explained that he had obtained this job through an organization, Americans with Disabilities, stated that he worked thirty hours per week, and acknowledged that he could "probably" do ten more hours of work each week. (Tr. 41).

B. **Medical Opinion Evidence**

No treating source has opined that Blauch's autism is disabling. Instead, three non-treating sources have expressed opinions regarding the degree of impairment experienced by Blauch. While these three opinions differ somewhat, they all share a common theme. None of the opinions describe the severity of Blauch's condition as wholly disabling and, for the most part, they characterize him as suffering from no more than moderate impairment in some spheres of workplace functioning.

Blauch was initially evaluated in September of 2021 by Dr. John Gavazzi, a non-treating, non-examining state agency expert. (Tr. 61-67). At that time Dr. Gavazzi characterized Blauch's autism as a severe impairment, (Tr. 63), but determined that Blauch was mildly impaired with respect to his ability to understand, remember, apply information as well as adapt to workplace changes and interact with others. (Tr. 64-65). Dr. Gavazzi found that Blauch was moderately impaired in terms of his ability to adapt, interact with others, and manage himself. (Tr. 64). However, according to the doctor Blauch was not significantly limited in many areas of workplace activity, including: The ability to be aware of normal hazards and take appropriate precautions; the ability to travel in unfamiliar places or use public transportation; the ability to set realistic goals or make plans independently of others; the ability to ask simple questions or request assistance; and the ability to maintain

socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (Tr. 64). Given these findings, Dr. Gavazzi concluded that Blauch could "perform one- or two-step, routine tasks in a stable environment." (Tr. 66).

Four months later, on January 26, 2022, a consulting examining source, Dr. Leah Bielski, rendered a second opinion regarding Blauch's limitations and capabilities. (Tr. 470-76). Dr. Bielski's report of this examination noted that Blauch had completed a bachelor's degree and was working thirty hours per week as a cart attendant at a grocery store. (Tr. 470). Upon examination, Dr. Bielski found that Blauch's speech was fluent; his insight and judgment were good; his thought processes were coherent and goal oriented; and his intellectual functioning was average. (Tr. 471-72). Dr. Bielski determined that Blauch was mildly impaired in terms of his ability to understand, remember, and carry out simple instructions and make simple workplace decisions. (Tr. 474). According to the doctor, Blauch would face moderate impairments when it came to complex decision-making, as well as interacting with the public, coworkers, and supervisors. (Tr. 474-75). Only in the arena of responding to workplace changes in routine did Dr. Bielski deem Blauch to be markedly impaired.

Finally, On February 2, 2022, a non-examining state agency expert, Dr. Edward Jonas, provided a third assessment of Blauch's ability to meet the

intellectual and emotional demands of the workplace. (Tr. 75-83). This assessment took into account the full body of clinical evidence as well as all of the prior medical opinions. (Id.) In this regard, Dr. Jonas found Dr. Bielski's opinion to be only partially persuasive since it overstated Blauch's adaptation impairments. (Id.) Given the overall paucity of clinical evidence, Dr. Jonas indicated that there was insufficient evidence to fully assess at Step 3 Blauch's ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage himself. (Tr. 78). However, Dr. Jonas went on to opine that Blauch presented as moderately impaired with respect to his ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage himself. (Id.) The doctor also determined that Blauch was moderately impaired in his ability to understand and remember detailed instructions; interact with supervisors, coworkers, and the public; or complete a normal workday and workweek without interruptions and perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 81-82). However, the doctor found that Blauch was not significantly impaired in multiple spheres of workplace conduct, including: The ability to carry out very short and simple instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to perform

activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to sustain an ordinary routine without special supervision; the ability to work in coordination with or in proximity to others without being distracted by them; the ability to make simple work-related decisions; the ability to be aware of normal hazards and take appropriate precautions; the ability to travel in unfamiliar places or use public transportation; and the ability to set realistic goals or make plans independently of others. (Id.)

Having made these findings Dr. Jonas concluded that Blauch:

[I]s able to carry out short, simple instructions. He can make simple decisions. He appears able to accept instruction and to carry out directives. Stress tolerance is somewhat limited. The functional limitations resulting from the claimant's MH impairments do not preclude him from meeting the basic mental demands of simple routine tasks on a sustained basis.

(Tr. 82).

## C. **The ALJ Hearing and Decision**

It was against this equivocal medical backdrop that Blauch's disability claim came to be heard by the ALJ on August 16, 2022. (Tr. 36-58). At the hearing, Blauch, his mother, and a Vocational Expert testified. (Id.) In his testimony, Blauch acknowledged working thirty hours per week at a local grocery store. (Tr. 41). When asked by the ALJ if he could perform another ten hours a week, Blauch stated: "I think I probably could do it." (Id.)  In her testimony, Blauch's mother emphasized

the degree to which her son's autism impaired his ability to adapt to workplace changes, but described this impairment in terms which were less than fully disabling, stating that Blauch would become a "little agitated" when confronted by change. (Tr. 50).

Following this hearing, on September 1, 2022, the ALJ issued a decision denying Blauch's application for benefits. (Tr. 17-30). In that decision, the ALJ first concluded that Blauch met the insured status requirements of the Social Security Act through September 30, 2023. (Tr. 19). The ALJ determined that Blauch had, in fact, engaged in substantial gainful activity from October 2021 through the present but prior to October 2021 there had been a continuous twelve-month period during which the claimant did not engage in substantial gainful activity. (Tr. 19-20).

At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Blauch's autism was a severe impairment. (Tr. 20). At Step 3, the ALJ determined that Blauch did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 20-22).

Between Steps 3 and 4, the ALJ fashioned a residual functional capacity ("RFC"), considering Blauch's limitations from his impairment, stating that:

> After careful consideration of the entire record, the undersigned finds
> that the claimant has the residual functional capacity to perform a full

range of work at all exertional levels but with the following
nonexertional limitations: work is limited to simple, routine, repetitive
tasks in a work environment free from fast-paced production involving
only simple work-related decisions with few, if any, workplace
changes, no interaction with the public, occasional interaction with
coworkers but no tandem tasks, occasional supervision.

(Tr. 22).

Specifically, in making the RFC determination, the ALJ considered the sparse

clinical evidence, the medical opinions, and Blauch's self-described activities. In

particular, the ALJ observed that:

At the hearing on August 16, 2022, the claimant testified that he lives
with his parents and his two siblings. They have a pet dog and he
sometimes helps take care of it. He currently has a part-time job at the
grocery store as a cart handler; he works about 30 hours per week. He
thinks that if they needed him to work 10 more hours a week, then he
could do it. He can dress and shower by himself. He can use a
microwave and an oven. Sometimes he does grocery shopping. He does
not vacuum, sweep, or do the laundry or dishes. He sometimes takes
out the trash if he is asked. He has a driver's license and drives to work,
to the gas station, and to his friend's house about 10 minutes away; he
sees his friend once or twice a month. He has a checking account that
he shares with his mother but he does not write checks; he has only
written a check maybe one time. He uses a debit card. His mother
maintains the balance on his checking account. He lived away from
home for a year from around 2018 to 2019 while he was volunteering
at a non-profit in D.C. He used to work at Goodwill where he sorted
through donations but he was fired because he was not fast enough. He
noted that the job he has now allows him to work alone and at his own
pace. He confirmed that he spends a lot of things for which he has an
obsessive interest and thus will "let other things go."

(Tr. 23).

The ALJ also carefully evaluated the medical opinions, none of which found

Blauch's autism to be wholly disabling, stating that:

> The undersigned has fully considered the medical opinions and prior administrative medical findings as follows:
>
> At the request of Disability Determination Services (DDS), the claimant's records were reviewed by John David Gavazzi, Psy.D., on September 10, 2021, when the claim was at the initial level of consideration. On February 2, 2022, Edward A. Jonas, Ph.D., independently reviewed the records when the claim was at the reconsideration level. Dr. Gavazzi found a severe mental impairment and opined that for the current evaluation, the claimant has a mild limitation in understanding, remembering, or applying information, a moderate limitation in interacting with others, a mild limitation in concentrating, persisting, or maintaining pace, and a moderate limitation in adapting or managing oneself, while Dr. Jonas found insufficient evidence through the date last insured of September 30, 2021 but opined that the claimant has moderate limitations in all areas of mental functioning. Dr. Jonas also opined that the claimant can meet the basic mental demands of simple routine tasks on a sustained basis (Exs. 3A; 4A; 5A; 8A).
>
> Dr. Gavazzi's opinion is supported by citations to relevant evidence showing an impairment of autism spectrum disorder level 1 but functional activities of daily living, completion of college level courses, and no prescriptions for psychotropic agents or inpatient psychiatric admissions (Exs. 3A/5-6; 4A/5-6). However, it is not consistent with subsequent evidence, including Exhibit 9F, which was reviewed by Dr. Jonas and established some limitations in interpersonal functioning and stress (Exs. 5A/5; 8A/5). As support for his finding of insufficient evidence, Dr. Jonas explained that the claimant was last seen by a treatment provider in around May 2021 and that there was no detailed mental status examination prior to and proximal to the date last insured (Exs. 5A/4; 8A/4). This opinion is not consistent with recent earnings that extend the claimant's date last insured to September 30, 2023 (Ex. 8D), with a file that contains medical records from March 2020 through

June 2022. However, Dr. Jonas's opinion as to the current evaluation is consistent with evidence received at the hearing level that confirms limitations due to the claimant's autism but no recent treatment (Exs. 5F; 10F). Therefore, Dr. Gavazzi's opinion is unpersuasive, while Dr. Jonas's opinion is partially persuasive.

At the request of DDS, the claimant's records were reviewed by State agency medical consultants who opined that there are no severe physical impairments (Exs. 3A; 4A; 5A; 8A). The undersigned finds these opinions to be persuasive because they are supported by citations to relevant evidence demonstrating the claimant's asthma has been asymptomatic for many years with normal respiratory exams, no significant physical limitations alleged, and no recent treatment for asthma (Exs. 3A/3; 4A/3; 5A/3; 8A/3). They are also consistent with evidence received at the hearing level that shows no recent medical treatment for any physical impairment (Exs. 5F; 6F; 7F; 10F; 11F).

The opinion of consultative examiner Leah Bielski, Psy.D., at Exhibit 9F is somewhat supported by the claimant's presentation during the evaluation and his performance on mental status testing. The claimant reported feeling apathetic and he had poor eye contact as well as a flat affect. However, he was cooperative. His recent and remote memory skills were mildly impaired but his attention and concentration were intact. His intellectual functioning was estimated to be average and his general fund of knowledge was appropriate to experience. Furthermore, his insight and judgment were good (Ex. 9F/4-5). It is unclear why Dr. Bielski opined that the claimant has a marked limitation in responding appropriately to usual work situations and to changes in a routine work setting, other than merely indicating that the claimant has autism spectrum disorder (Ex. 9F/8). The claimant reported that he is able to dress, bathe, and groom himself on a daily basis. He does cleaning as needed. He is able to manage his money and drive (Ex. 9F/5). Dr. Bielski's opinion is, at most, partially consistent with the other medical evidence of record that establishes no more than moderate limitations in all areas of mental functioning including adapting or managing oneself (Exs. 1F; 2F; 4F; 5F; 10F). Accordingly, Dr. Bielski's opinion is only partially persuasive.

(Tr. 26-27).

Having arrived at this RFC assessment, the ALJ found at Step 4 that Blauch could perform his past relevant work at the grocery and concluded at Step 5 that there were other jobs which existed in substantial numbers in the national economy which Blauch could perform. (Tr. 28-29). Accordingly, the ALJ concluded that Blauch did not meet the stringent standard for disability set by the Act and denied this claim. (Tr. 30).

This appeal followed. (Doc. 1). On appeal, Blauch contends that the ALJ erred in his assessment of Blauch's severe impairment, autism; failed to adequately consider other nonsevere medical conditions; and neglected to adopt all of Dr. Bielski's findings when crafting the RFC in this case. This case is fully briefed and is, therefore, ripe for resolution. For the reasons set forth below, we will affirm the decision of the Commissioner.

## III.  <u>Discussion</u>

### A. <u>Substantial Evidence Review – the Role of this Court</u>

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); <u>Johnson v. Comm'r of Soc. Sec.</u>, 529 F.3d 198, 200

(3d Cir. 2008); <u>Ficca v. Astrue</u>, 901 F. Supp.2d 533, 536 (M.D. Pa. 2012).

Substantial evidence "does not mean a large or considerable amount of evidence, but

rather such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988). Substantial

evidence is less than a preponderance of the evidence but more than a mere scintilla.

<u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971). A single piece of evidence is not

substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a

conflict created by the evidence. <u>Mason v. Shalala</u>, 994 F.2d 1058, 1064 (3d Cir.

1993). But in an adequately developed factual record, substantial evidence may be

"something less than the weight of the evidence, and the possibility of drawing two

inconsistent conclusions from the evidence does not prevent [the ALJ's decision]

from being supported by substantial evidence." <u>Consolo v. Fed. Maritime Comm'n</u>,

383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is

supported by substantial evidence the court must scrutinize the record as a whole."

<u>Leslie v. Barnhart</u>, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has recently underscored for us the limited scope of our

review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout
> administrative law to describe how courts are to review agency
> factfinding. <u>T-Mobile South, LLC v. Roswell</u>, 574 U.S. ——, ——,
> 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-

evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 139 S. Ct. at 1154.

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

16

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that

decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

This principle applies with particular force to legal challenges, like the claim made here, based upon alleged inadequacies in the articulation of a claimant's mental RFC. In <u>Hess v. Comm'r Soc. Sec.</u>, 931 F.3d 198, 212 (3d Cir. 2019), the United States Court of Appeals recently addressed the standards of articulation that apply in this setting. In <u>Hess</u>, the court of appeals considered the question of whether an RFC, which limited a claimant to simple tasks, adequately addressed moderate limitations on concentration, persistence, and pace. In addressing the plaintiff's argument that the language used by the ALJ to describe the claimant's mental limitations was legally insufficient, the court of appeals rejected a *per se* rule which would require the ALJ to adhere to a particular format in conducting this analysis. Instead, framing this issue as a question of adequate articulation of the ALJ's rationale, the court held that, "as long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.'" <u>Hess v. Comm'r Soc. Sec.</u>, 931 F.3d 198, 211 (3d Cir. 2019). On this score, the appellate court indicated that an ALJ offers a valid explanation a mental RFC when the ALJ highlights factors such as "mental status examinations and reports that revealed that [the claimant] could

18

function effectively; opinion evidence showing that [the claimant] could do simple work; and [the claimant]'s activities of daily living, . . . . " Hess v. Comm'r Soc. Sec., 931 F.3d 198, 214 (3d Cir. 2019).

In our view, the teachings of the Hess decision are straightforward. In formulating a mental RFC, the ALJ does not need to rely upon any particular form of words. Further, the adequacy of the mental RFC is not gauged in the abstract. Instead, the evaluation of a claimant's ability to undertake the mental demands of the workplace will be viewed in the factual context of the case, and a mental RFC is sufficient if it is supported by a valid explanation grounded in the evidence.

## B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); see also 20 C.F.R. §404.1505(a).  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1505(a). To receive benefits under Title II of

19

the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §404.1520(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §404.1545(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has identified limitations that would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. Biller, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at

22

*5 (M.D. Pa. Mar. 29, 2017), <u>report and recommendation adopted sub nom. Metzgar</u> <u>v. Colvin</u>, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); <u>Rathbun</u> <u>v. Berryhill</u>, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), <u>report and recommendation adopted</u>, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. <u>Mason</u>, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §404.1512(f); <u>Mason</u>, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate

which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-07. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999).

### C. <u>Legal Benchmarks for the ALJ's Assessment of Medical Opinions</u>

The plaintiff filed this disability application after a paradigm shift in the manner in which medical opinions were evaluated when assessing Social Security claims. Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy. However, in March of 2017, the Commissioner's regulations governing medical opinions changed in a number of fundamental ways. The range of opinions that ALJs were enjoined to consider were broadened substantially, and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis. As one court as aptly observed:

> The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence ("Revisions to Rules"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), see

24

20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." Id. at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. Id. at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she

considered those factors contained in paragraphs (c)(3) through (c)(5). Id. at §§ 404.1520c(b)(3), 416.920c(b)(3).

Andrew G. v. Comm'r of Soc. Sec., No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020).

Oftentimes, as in this case, an ALJ must evaluate various medical opinions. Judicial review of this aspect of ALJ decision-making is still guided by several settled legal tenets. First, when presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Thus, when evaluating medical opinions "the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Mason, 994 F.2d at 1066). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight.

Further, in making this assessment of medical evidence:

An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion. See Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015); Turner v. Colvin, 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"); Connors v. Astrue, No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June

26

10, 2011). It follows that an ALJ can give partial credit to all medical opinions and can formulate an RFC based on different parts from the different medical opinions. See e.g., Thackara v. Colvin, No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015).

Durden v. Colvin, 191 F.Supp.3d 429, 455 (M.D. Pa. 2016). Finally, where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings, 129 F.Supp.3d at 214–15.

## D. **Legal Benchmarks for the ALJ's Assessment of a Claimant's Alleged Symptoms**

The interplay between the deferential substantive standard of review that governs Social Security appeals, and the requirement that courts carefully assess whether an ALJ has met the standards of articulation required by law, is also illustrated by those cases which consider analysis of a claimant's reported pain. When evaluating lay testimony regarding a claimant's reported degree of pain and disability, we are reminded that:

> [T]he ALJ must necessarily make certain credibility determinations, and this Court defers to the ALJ's assessment of credibility. See Diaz v. Comm'r, 577 F.3d 500, 506 (3d Cir.2009) ("In determining whether there is substantial evidence to support an administrative law judge's decision, we owe deference to his evaluation of the evidence [and] assessment of the credibility of witnesses...."). However, the ALJ must specifically identify and explain what evidence he found not credible and why he found it not credible. *Adorno v. Shalala,* 40 F.3d 43, 48 (3d Cir.1994) (citing *Stewart v. Sec'y of Health, Education and Welfare,* 714 F.2d 287, 290 (3d Cir.1983)); see also Stout v. Comm'r, 454 F.3d

27

1050, 1054 (9th Cir.2006) (stating that an ALJ is required to provide "specific reasons for rejecting lay testimony"). An ALJ cannot reject evidence for an incorrect or unsupported reason. <u>Ray v. Astrue</u>, 649 F.Supp.2d 391, 402 (E.D.Pa.2009) (quoting <u>Mason v. Shalala</u>, 994 F.2d 1058, 1066 (3d Cir.1993)).

<u>Zirnsak v. Colvin</u>, 777 F.3d 607, 612–13 (3d Cir. 2014).

Yet, it is also clear that:

Great weight is given to a claimant's subjective testimony only when it is supported by competent medical evidence. <u>Dobrowolsky v. Califano</u>, 606 F.2d 403, 409 (3d Cir. 1979); accord <u>Snedeker v. Comm'r of Soc. Sec.</u>, 244 Fed.Appx. 470, 474 (3d Cir. 2007). An ALJ may reject a claimant's subjective testimony that is not found credible so long as there is an explanation for the rejection of the testimony. Social Security Ruling ("SSR") 96–7p; <u>Schaudeck v. Comm'r of Social Security,</u> 181 F.3d 429, 433 (3d Cir. 1999). Where an ALJ finds that there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the individual's pain or other symptoms, however, the severity of which is not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

<u>McKean v. Colvin</u>, 150 F.Supp.3d 406, 415–16 (M.D. Pa. 2015) (footnotes omitted).

Thus, we are instructed to review an ALJ's evaluation of a claimant's subjective reports of pain under a standard of review which is deferential with respect to the ALJ's well-articulated findings but imposes a duty of clear articulation upon the ALJ so that we may conduct meaningful review of the ALJ's conclusions.

In the same fashion that medical opinion evidence is evaluated, the Social Security Rulings and Regulations provide a framework under which the severity of

a claimant's reported symptoms are to be considered. 20 C.F.R. §§ 404.1529, 416.929; SSR 16–3p. It is important to note that though the "statements of the individual concerning his or her symptoms must be carefully considered, the ALJ is not required to credit them." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 363 (3d. Cir. 2011) (referencing 20 C.F.R. §404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled"). It is well settled in the Third Circuit that "[a]llegations of pain and other subjective symptoms must be supported by objective medical evidence." Hantraft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999) (referring to 20 C.F.R. § 404.1529). When evaluating a claimant's symptoms, the ALJ must follow a two-step process in which the ALJ resolves whether a medically determinable impairment could be the cause of the symptoms alleged by the claimant, and subsequently must evaluate the alleged symptoms in consideration of the record as a whole. SSR 16-3p.

First, symptoms, such as pain or fatigue, will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16–3p. During the second step of this credibility assessment, the ALJ must determine whether the claimant's statements about the intensity, persistence, or functionally

29

limiting effects of his or her symptoms are substantiated based on the ALJ's evaluation of the entire case record. 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–3p. This includes but is not limited to medical signs and laboratory findings, diagnoses, and other medical opinions provided by treating or examining sources, and other medical sources, as well as information concerning the claimant's symptoms and how they affect his or her ability to work. Id. The Social Security Administration has recognized that individuals may experience their symptoms differently and may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments, signs, and laboratory findings. SSR 16–3p.

Thus, to assist in the evaluation of a claimant's subjective symptoms, the Social Security Regulations identify seven factors which may be relevant to the assessment of the severity or limiting effects of a claimant's impairment based on a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). These factors include: activities of daily living; the location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his or her symptoms; treatment, other than medication that a claimant has received for relief; any measures the claimant has used to relieve his or her

symptoms; and, any other factors concerning the claimant's functional limitations and restrictions. Id.; see Koppenaver v. Berryhill, No. 3:18-CV-1525, 2019 WL 1995999, at *9 (M.D. Pa. Apr. 8, 2019), report and recommendation adopted sub nom. Koppenhaver v. Berryhill, No. 3:18-CV-1525, 2019 WL 1992130 (M.D. Pa. May 6, 2019); Martinez v. Colvin, No. 3:14-CV-1090, 2015 WL 5781202, at *8–9 (M.D. Pa. Sept. 30, 2015); George v. Colvin, No. 4:13–CV–2803, 2014 WL 5449706, at *4 (M.D. Pa. Oct. 24, 2014).

### E. **The ALJ's Decision is Supported by Substantial Evidence.**

In this setting, we are mindful that we are not free to substitute our independent assessment of the evidence for the ALJ's determinations. Rather, we must simply ascertain whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, Richardson, 402 U.S. at 401, and "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce, 487 U.S. at 565. Judged against these deferential standards of review, we are constrained to find that substantial evidence supported the decision by the ALJ that Blauch was not disabled. Therefore, we will affirm this decision.

In reaching this result we note that the ALJ's decision simply needed to credit

Blauch's testimony to conclude that he was not disabled since Blauch testified under oath that he could probably work forty hours per week in his current profession as a front end grocery store associate. This admission, standing alone, provided substantial evidence supporting a finding that Blauch was not totally disabled.

For his part, Blauch launches a threefold challenge to this disability determination. First, he argues that the ALJ did not adequately take into account his severe impairment—autism—in evaluating this disability claim. We disagree. Fairly read, the ALJ's decision gave a comprehensive, balanced and thorough assessment of the severity of Blauch's autism. This assessment, however, acknowledged several immutable facts. For example, the ALJ observed that Blauch's autism was undetected for much of the period of alleged disability, a factor which suggested that the condition was not so patent and clear that it would have been wholly disabling. The ALJ also noted that Blauch was diagnosed as high functioning, a diagnosis that was fully in accord with his activities of daily living which included employment and attaining a bachelor's degree. Further, the ALJ's decision was completely consistent with the medical opinions which were found to be persuasive. Those opinions noted that Blauch's autism, for the most part, imposed only mild to moderate limitations upon his ability to meet the demands of work. There was no error here.

Blauch's second argument fares no better. On appeal Blauch contends that the ALJ erred in failing to address more fully what the plaintiff characterizes as nonsevere impairments like learning disabilities, anxiety, depression, isolation, flat affect, apathetic moods, and memory impairments. In our view, this argument confuses two distinct concepts: impairments and symptoms. In this regard, as one court has aptly observed:

> [A] legal distinction exists between the ALJ's treatment of *symptoms* and *impairments*. See 20 C.F.R. § 404.1528.
>
> An *impairment* must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. 20. C.F.R. § 404.1508. "A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the plaintiff's] statement of symptoms."
>
> Id. The Social Security Administration defines signs, symptoms, and laboratory findings as follows:
>
> • **Signs:** are "anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques." 20 C.F.R. § 404.1528(b).
>
> • **Symptom:** the individual's own description or statement of his or her physical or mental impairments. 20 C.F.R. § 404.1528. The next sentence of the regulation clarifies: "[the plaintiff's] statements alone are not enough to establish that there is a physical or mental impairment." 20 C.F.R. § 404.1528(a); See Veal v. Soc. Sec. Admin., 618 F.Supp.2d 600, 606 (E.D. Tex. 2009).

Lundy v. Colvin, No. 6:14-CV-61-WSS-JCM, 2016 WL 11585712, at *4 (W.D. Tex. May 16, 2016), report and recommendation adopted, No. W-14-CV-61, 2016 WL 11585707 (W.D. Tex. June 3, 2016).

In this case, the factors which Blauch characterizes as inadequately addressed *impairments*, appear instead to be *symptoms* of his autism. Indeed, Dr. Hertrich's March 30, 2021, evaluation of Blauch expressly described many of these factors as symptoms of autism, rather than separate impairments. (Tr. 289-91). Given the doctor's description of these factors as symptoms of autism, we find no error in the ALJ's treatment of these matters. Consistent with Dr. Hertrich's evaluation, these behavioral issues were properly encompassed within the autism diagnosis. There was no further duty of articulation and analysis that was needed here.

Finally, Blauch contends that the ALJ erred in assessing the medical opinion evidence and specifically argues that the ALJ incorrectly assigned greater persuasive power to the non-examining source opinion which were rendered without the benefit of the full clinical record. This final argument fails both as a matter of law and as a matter of fact.

First, as a matter of law, it is clear that "[t]he ALJ–not treating or examining physicians or State agency consultants–must make the ultimate disability and RFC determinations." Chandler, 667 F.3d at 361. Further, in making this assessment of

medical opinion evidence, "[a]n ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion." <u>Durden</u>, 191 F.Supp.3d at 455. Moreover, "[s]tate agent opinions merit significant consideration," in this disability analysis. <u>Chandler</u>, 667 F.3d at 361. Further, the fact that a state agency opinion preceded some other analysis or medical evidence does not mean that the opinion should be automatically discounted. As the Third Circuit has explained:

> [B]ecause state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision. *The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it.*

<u>Id.</u> (emphasis added).

Moreover, in this case, the ALJ's decision actually afforded the least persuasive power to the earliest opinion rendered in this case, Dr. Gavazzi's September 2021 opinion. The ALJ then concluded that the most recent opinion, Dr. Jonas' February 2022 medical opinion, which considered the January 2022 examination results reported by Dr. Bielski, had the greatest persuasiveness. Thus, as a factual matter, the ALJ did precisely what Blauch argues should have been done: he focused on this most recent and comprehensive medical opinion in evaluating this disability claim.

In the final analysis, the ALJ's decision in this case, which found that that Blauch could perform work limited to simple, routine, repetitive tasks in a work environment free from fast-paced production involving only simple work-related decisions with few, if any, workplace changes, no interaction with the public, occasional interaction with coworkers but no tandem tasks, and occasional supervision, was entirely consistent with settled caselaw, which holds that: "as long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.'" Hess v. Comm'r Soc. Sec., 931 F.3d 198, 211 (3d Cir. 2019). On this score, it is well-settled that an ALJ offers a valid explanation for a simple task RFC when the ALJ highlights factors such as "mental status examinations and reports that revealed that [the claimant] could function effectively; opinion evidence showing that [the claimant] could do simple work; and [the claimant]'s activities of daily living, which demonstrated that [s]he is capable of engaging in a diverse array of 'simple tasks[.]'" Hess v. Comm'r Soc. Sec., 931 F.3d 198, 214 (3d Cir. 2019). The ALJ fulfille his duty here, and substantial evidence supported the ALJ's conclusions.

In closing, the ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant can demand in a disability proceeding. Thus,

notwithstanding the argument that this evidence might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.'" <u>Monsour Med. Ctr. v. Heckler</u>, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting <u>Hunter Douglas, Inc. v. NLRB</u>, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we find that substantial evidence supported the ALJ's evaluation of this case.

## IV.  <u>Conclusion</u>

Accordingly, for the foregoing reasons, the final decision of the Commissioner denying these claims will be AFFIRMED.

An appropriate order follows.


<u>*s/ Martin C. Carlson*</u>
Martin C. Carlson
United States Magistrate Judge

DATED: November 26th, 2024.